We will continue with our third argument of the day, in number 193413, Sweeney v. Raoul, and we'll start with Mr. Pearson. Good morning. You're on mute. Mr. Pearson, you may be on mute on your end. Good morning. Go right ahead. Can you hear me now? We can. Thank you all. I'm sorry. May it please the court. My name is Dale Pearson. I represent James M. Sweeney and Local 150 of the International Union of Operating Engineers, the plaintiffs' appellants in this case. Local 150 represents over 3,300 public employees employed by towns and municipal governments throughout Illinois in approximately 133 different bargaining units. After the Supreme Court's decision in Janus v. AFSCME, at least 30 of those public employees resigned their membership in the union and or ceased making fair share fee payments to the union. You know, Mr. Pearson, Janus clearly states that the statutory requirement that unions represent members and non-members alike does not justify different treatment of the two groups. Well, Your Honor, I believe because Janus held that individual non-members had a First Amendment right not to pay fair share fees as were required by the Illinois statute and as is common throughout public sector bargaining as well as in the private sector. That change is what creates, conversely, a First Amendment right on the part of non-members not to have to support the speech of members, not to have to support the speech of non-members. Janus speaks in terms of collective bargaining and grievance handling as speech. You're invoking both speech and association rights here. And so once Janus creates, in effect, or recognizes a First Amendment right on the part of non-members not to support the union, the converse has to be true. Members have a right not to support non-members in their speech in grievance handling. Mr. Pearson, can I just clarify something, please? Because I wasn't crystal clear from your briefs. Are you pursuing just a facial challenge here to the requirement to represent non-members in individual grievance proceedings? Are you also attempting to proceed with an as-applied challenge? I think, Your Honor, it's both. It's a facial challenge because now that Janus has recognized the First Amendment right not to support the speech of, we would say, non-members, on its face, the fair representation obligation in the statute would be unconstitutional. We say as applied to the grievance handling process. It's true we're taking another step. But is your as-applied to the grievance process, is that a separate as-applied challenge or just a narrowing of your facial challenge? I couldn't tell from your briefs and in the district court below, everything focused on a facial challenge. I understand the scope of what the district court addressed. You think she addressed the wrong question, but you're a little bit of a moving target on exactly what claim you're pursuing and appealing here. And if it's an as-applied, you're going to have to explain to me how you have supported that or even pled that in the first instance. Your Honor, we believe that it is narrow and it's narrowed by the fact that in grievance handling, it does not invoke the duty of fair representation and is not, in fact, a challenge to exclusive representation. Is that what you mean, Mr. Pearson, by as-applied? When your third amended complaint uses the term as-applied, as it does on page 8 in count 1, when you say as-applied, do you mean as-applied as to non-member grievance proceedings? Is that what you mean by it? Yes, Your Honor. The duty for representation now that Janice has said we have a First Amendment right not to support the speech of non-members as applied to grievances. Okay, so the difficulty that I have with that is most of the time in an as-applied setting, we have concrete and particularized adversity where we can look at the, in an application here, we could look at a non-member that was going through or on the eve of a grievance proceeding. And we could then consider how the First Amendment principles that you invoke apply to that scenario. And the reason that the concreteness and the particularity seem to matter, in my view, is because of what you articulate in your brief as to that kind of less restrictive measure that is referred to in the Janice opinion. But without any concreteness or particularity, what I worry about is that we're effectively being asked to issue an advisory opinion. Your Honor, the district court addressed this in the state's motion to dismiss when they spoke or challenged the ripeness of the claim, I believe. We offered, as part of our summary judgment support, at least one letter from one of the resigning members, a person who opposed Janice that was represented by Local 150, sent in a resignation letter. And it's kind of a form letter that you find very often on the Right to Work and these other websites that says, I'm resigning my membership post-Janice. I don't have to pay you any more fair share of fees, but you still have to represent me in every way. But wasn't that addressing the ripeness under a pre-enforcement facial challenge as opposed to an as-applied challenge that it sounds like you're now arguing? Well, I'll concede, Your Honor, that we haven't had that situation occur where someone claimed, you've got to represent me, and we said no. That is true. So I'm grateful, Mr. Pearson, that you referred to the district court opinion because that helps frame what's on my mind on this advisory opinion question. Because one of the points that the district court made was that, and I'm looking at appendix page 10, was that the Janice decision itself, I'll let you get there. Go ahead and I'll let you get there. Got it, Your Honor. Okay. So this is in the course of, you know, addressing whether there's a case or controversy and ripeness and all that. The district court observes that Janice itself altered the nature of the plaintiff's pre-existing statutory obligations and created the imminent constitutional injury alleged to exist here. It's very odd, in my view, for a Supreme Court decision to ripen and create a constitutional injury. Now, to be sure, Supreme Court decisions don't answer all questions for all time. We know that. But I don't understand how Janice itself is the source of the constitutional injury in an as-applied challenge. Well, Your Honor, I guess, again, we've got to concede that we don't have that record. We didn't have that experience where individual non-members or people who chose to be non-members made a demand on us, a specific demand to pursue a grievance. So if that's the case, then, and it's really, as Judge St. Eve suggests, this is really kind of a facial challenge, and it's a facial challenge to a non-member scenario generically in a grievance setting, don't you have to satisfy the Salerno test? In other words, don't you have to show that there is no set of circumstances under which this provision of Illinois law, the fair representation provision, can be applied constitutionally? Zero. It's an empty set. And if that's the applicable legal test, it seems to me that you run pretty quickly into the merits principle that Judge Rovner started the argument with. Your Honor, I would suggest that, first of all, this issue I don't think was raised in the lower court or… …that we have an Article III case or controversy. So I understand that, but the Constitution doesn't leave us a choice. We've got to talk about it. Also, I question whether or not you really did pursue this as applied challenge in the district court, and that's why it wasn't vetted through the district court. Looking at the briefing and the court's rulings, the focus really was on a facial challenge, which is why we started with questions about is this facial or applied. You seem to have shifted, for purposes of appeal, to a facial challenge, to an as applied challenge. Your Honor, there was a shift. I will acknowledge that. As the district court pointed out in the first opinion, denying the motion to dismiss, we filed a lawsuit prior to the Janus decision being issued. And then the court suggested that we sharpen the claims, which we tried to do. We focused heavily on the grievance handling aspect of it because of the alternative suggested by the Janus court, plus we believed that that would be how to avoid the exclusive representation problem. Your Honor, if I can go back a step to the questions about how does a Supreme Court case create this sort of case of controversy? Janus was a sea change. I think everybody recognizes that after 41 years of being able to charge nonmembers for services through a fair share fee, and dozens of legislatures passing laws saying that fair share fees are lawful, now to find that they are unlawful under the First Amendment. Can you think of another scenario? It doesn't matter. Step way outside the First Amendment. Can you think of another scenario where the Supreme Court has decided a case and that very decision creates imminent constitutional injury? I mean, I was trying to think. I can't identify another circumstance. And that is even crediting. I think you're absolutely right about the impact of Janus and, you know, watershed, sea change. I think all that's absolutely correct. But I don't I still don't understand how it that that the U.S. Supreme Court holding can create imminent constitutional injury for us to take on or take up an as applied constitutional challenge. Well, I suppose your honor, once that grievance, once that grievance does appear and says you've got to pursue this grievance on my behalf and I'm not going to pay you, then the injuries were not getting compensated for our services. Now, post Janus, when we would have been prior to Janus. Oh, sure. And maybe that day's maybe that day's coming. Right. But I don't I don't for the life of me, I can't figure out how to think through. What a less restrictive alternative would be without a set of facts. I decide I'm sorry. Who decides what grievances are pursued? Can a nonmember employee compel the union to process a grievance on his or her behalf? In this scheme under the Illinois law. No, your honor. But because the Illinois statute allows individual employees to pursue their own grievances, they have this option outside of the exclusive representation regime that enables them to do that. So that's one reason why we believe the Janus alternative of being able to charge people for services or denying them representation in the grievance procedure is appropriate. It's a way of avoiding the constitutional question, actually, because without an exclusive representation obligation, there's no duty of fair representation on the part of the union. And therefore, we can't be accused of violating the duty of representation. If we say to an employee, we're not going to pursue your grievance, go ahead and do it yourself. So long as they've got that option, there's no fire. Yeah. Okay. You know, you claimed in your opening brief that you never argued in the district court that the duty of fair representation was itself unconstitutional. But if, as you state, your argument is that the narrowly tailored option of requiring non-union employees to pay for their own grievances should be allowed, that's a question for the legislature, isn't it? Well, I think it's because, though, of the Janus ruling, it's the constitutional question that we say is presented by Janus, which is that the union and its members do not have an obligation anymore to subsidize the speech of non-members. So the legislature certainly tries to take into account constitutional questions, but it's not an issue that can be addressed exclusively in the legislature. Mr. Pearson, we've taken up a lot of your time this morning, and mindful of that, I'm inclined to give you a couple of minutes for rebuttal. But why don't we hear from the state in the meantime? Thank you very much, Your Honor. You're welcome. May it please the court, my name is Frank Bieschott, and I represent the Attorney General and the Executive Director of the Labor Relations Board. The principle of exclusive representation and the corresponding duty of fair representation were indisputably constitutional before Janus. This court should affirm summary judgment because nothing in Janus changed that conclusion. Mr. Bieschott, why don't you go to the subject matter jurisdiction question? My understanding of plaintiff's claim is that it is a facial challenge to the duty of fair representation in the context of grievance and grievance processing. As Your Honor has noted, an as-applied challenge would require specific facts regarding how the duty of fair representation is manifested in a particular case. And the vehicle for that sort of claim would be through an unfair labor practice proceeding before the Illinois Labor Relations Board, after which there would be judicial review in the Illinois appellate courts. So this claim really goes to a facial claim that under no circumstances can the duty of fair representation be constitutional in the absence of fees. But we know from the Janus decision that the court did not intend or think it was creating a constitutional problem by invalidating fair share fees, because the court both made direct statements to that effect, and it also engaged in an extended discussion of the duty of fair representation, during which it concluded that fees were not justified on the basis of that duty. That may be right as a merits matter, but can you just back up a second? How is there any adversity here? This is a situation where, as Mr. Pearson explained, this lawsuit was put on file pre-Janus. It's like a conditional or contingent lawsuit. Janus comes down, and I even question how is the Attorney General of the state of Illinois a proper party to this? I think there would only be a justiciable matter as to a facial challenge, and the Attorney General gets involved because we're defending the constitutionality of the statute. But that's another way of saying that the mere fact that a declaratory judgment action was brought post-Janus, or at least after the amended complaint, seeking a declaration of rights after Janus is justiciable, because we the plaintiff presumably have a different view of the statute than the defendant, and that's sufficient adversity. Are you sure about that? Well, I would have two responses, Your Honor. The first is that I think the jurisdictional hook for plaintiffs is that because they do represent public sector unions in Illinois, they are subject to the requirements of the provision in the Public Labor Relations Act imposing the duty of fair representation. But to the extent that Your Honor disagrees and finds that there is no justiciable matter, this court can certainly dismiss the appeal for lack of justiciation. Why did the state drop the Article III argument? I think it was because, if I'm getting the timing correctly, I think that occurred after Janus, because the original complaint sort of presumed that Janus was going to be decided in a certain way and essentially sought a declaration of what the law would be in the event that Janus is decided the way that they expected that it would be. But then post-Janus, plaintiffs are subject to the duty of fair representation pursuant to Section 10B of the Labor Relations Act. And so I believe that was the thinking at that point is that they're subject to the requirements of that statute, and therefore they're bringing a facial challenge to both, at that point, the fair representation and exclusive representation. And I guess turning back to the merits on their argument, we know that the court did not intend or think that it was creating a constitutional problem because it directly said so. It stated that states can keep their labor relations systems exactly as they are, only they cannot force nonmembers to subsidize public sector unions. In this way, these states can follow the model of the federal government and the other 28 states. Elsewhere, the court reaffirmed the constitutionality of exclusive representation, and plaintiffs have not addressed these unambiguous statements, confirming the ongoing validity of both exclusive representation and the corresponding duty of fair representation. You know, although the union may have discretion as to which grievances to pursue, it runs the risk of an unfair labor practice charge if it prioritizes union members' grievances over those of nonmembers. Practically speaking, does requiring the union to pursue a nonmember's grievance or risk such a charge amount to compelling union speech? No, Your Honor, for a couple of reasons. One is that when the union is pursuing a grievance that arises out of an individual employee's case, it is not simply representing that employee. It is still representing the bargaining unit as a whole, which is where the union gets the discretion to prioritize the bargaining unit's interests and to even choose not to pursue meritorious grievances. Another reason is that we know from Janus itself that the court did not contemplate that unions are being coerced into engaging any speech because the court specifically said that no union is ever compelled to seek the exclusive representative designation. Instead, they voluntarily seek that status and accept the benefits that come with it along with the obligations because in the court's words, those benefits greatly outweigh any extra burden that's imposed by the duty of fair representation. And this court made that same point in Sweeney when it rejected a takings clause challenge in the private sector scenario. It made the same point there where the court held that unions are adequately compensated for the obligations of the duty of fair representation through the various benefits that they receive as the exclusive representative. And regarding the specific benefits, the court identified a number of them in Janus. The court identified the privilege placed in negotiations, but there's also the ability to control the grievance process. They have access to employee information. Dues are deducted directly from paychecks. And then there are other benefits regarding union activity during working hours, union orientation, and any number of things. And that is why in the court's view in Janus, that was one of the reasons why the court found there was no compelling interest in preventing free riders. And that was because both the two arguments that the court identified, one was that in the absence of fees, unions will no longer be willing to take on the responsibilities of exclusive representative. And the court rejected that, noting the history in jurisdictions where fees have not been required, saying that unions will still accept that designation because of the benefits that go along with it. And along the same lines, the court explained that fundamental fairness did not require fees because there was nothing unfair about imposing the obligation of the duty of fair representation, both given all the benefits that the union receives as an exclusive representative, and while also pointing out the problems that would arise if the powers of exclusive representation did not come along with the obligation of fair representation and how those two concepts have always been tied together. And that discussion is fatal to a number of plaintiff's arguments that they raised in their opening brief. One was that fees and there is a mutuality between the obligation of fair representation and the ability to collect fees. But the court explained in Janus that the duty of fair representation arises from exclusive representation, not fees. And this court has reached the same conclusion, the Illinois appellate court has, that has been consistent throughout. Mr. Bichotte, what relief do you understand the plaintiffs to be asking for? Well, I think that's a little difficult because it seems I think they're asking just to strike down the duty of fair representation. But if that were all that occurred, then I think you would possibly be creating other problems because unless you have sort of a corresponding change to the Illinois statute that would permit non-union members to pursue their own grievances or to have somebody else represent them, otherwise you end up in that situation that the Supreme Court was very conservative in Janus. Is that the way you interpret this, the challenge that they bring? Because I thought they were asking us to declare 31510B1 Romanet 2 unconstitutional, wholesale. I agree, Your Honor. Yes, I agree. And I think that's one of the flaws in the plaintiff's argument is that if you provide that relief, then a whole slew of other problems arise as a result. And I think that shows a mismatch also between the plaintiff's claim and the constitutional option that they identify in Janus or the pay for services option is that the pay for services option, I think necessarily was based upon the assumption that those employees who choose not to pay for the union's representation would still have the option of pursuing the grievance themselves or being represented by somebody else. And we know that because in the very next paragraph, after the court presents that option, it addresses the possibility that the duty of representation is unfair and again, cites the steal for the basic proposition that anytime you have exclusive representation, you must also have fair representation. Otherwise, you have just this underlying problem. And one point I want to make with employees pursuing their own grievances is that plaintiffs in their brief argue that there is an existing exception for grievances whereby individuals can pursue their grievances throughout. But as the Illinois Supreme Court held in Stuhleck, that provision of the act applies only to the initial stage where the, yeah, it provides only to the initial stage where the employee can reach an agreement with the employer. And even at that stage, the union has to be present with it. There's no ability in the act for an employee to pursue the grievance all the way through. Could an individual employee bring someone outside of the union in to represent him or herself throughout the process? No, Your Honor. Not unless, I mean, I guess in the reply brief, the plaintiffs argue that there's nothing prohibiting a collective bargaining agreement from providing for that type of a process, but they don't identify any agreement that has one and I'm not aware of one. Does it preclude them? Does a collective bargaining agreement preclude them from doing so? It would depend on that agreement. The statute is silent. The only thing that the statute requires is that the employee be able to pursue the grievance at that initial stage. Beyond that, the parties can contract however they see fit. But I'm not aware of any instances where the employee can, on her own or while represented by somebody else, pursue the grievance independence of the union. And that gets us back also to the initial point and one of the underlying concerns in the compelled speech argument is that when the union is pursuing a grievance, it is not solely on behalf of that employee. It is also on behalf of the unit as a whole. And so that's something that also differentiates this situation from Janice. And so, so I guess I would just like to conclude, unless Your Honors have any further questions. We know that that the duty of fair representation was constitutional before Janice. The court in Janice went out of its way to explain that exclusive representation and the systems that currently exist in that are currently being operated by states like Illinois can continue exactly as they are with the sole exception for these. Those statements are supported by the court's extensive analysis of the relationship between these and the duty of fair representation and its conclusion that the two are not connected. And for all those reasons, we ask that this court affirm summary judgment in the defendant's favor. Okay. Thank you very much. Mr. Pearson, we'll give you two minutes. I need to unmute again. I'm sorry, Your Honor. As to that last point in the Stahula case, that case did turn in part on the fact that the collective bargaining agreement between the parties there did prohibit individuals from pursuing grievances beyond the statutory first level. I think that that is, in effect, maintaining an exclusivity for the union to pursue grievances beyond that level. And therefore, the duty of fair representation attaches. One of the reasons why we're arguing that this exception in the statute allows us to avoid the fair representation obligation is because it's not exclusive. And we would negotiate agreements that allowed people to go forward with their own grievances so that we would not have exclusivity and therefore not run the risk of a fair representation obligation. I think Judge Rovner, you were absolutely correct when you pointed out that if our choices between an unfair labor practice charge and representing somebody for free, we are being compelled to do it. That's why the provision of the act that Your Honor cited a moment ago, which creates the duty of fair representation, is unconstitutional. And we wanted to narrow it, though, with respect to grievance handling. We don't see grievance handling as being the same thing as contract negotiation. Neither did the Supreme Court in Janus. There's a difference. That's why Janus offers the alternative for handling disciplinary grievances, because those are individual cases. And we say so long as you've got an individual option to pursue it, it's not exclusive. There's no DFR problem. Your Honor, as to the jurisdictional issue, I guess we would ask if the court's not inclined to rule in our favor on the merits for a remand so that we might address the subject matter jurisdiction problem and or amend the complaint to more narrowly focus the challenge that we're bringing. Thank you very much, Your Honor, for the opportunity to appear today. You're quite welcome. And thanks to both counsel. We'll take the case under advisement.